UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**JACKSON GREEN,**<br><br>Defendant. | Case No.: 24-cr-00062 (ABJ) |

GOVERNMENT'S SUPPLEMENTAL MOTION
TO REVOKE DEFENDANT'S PRETRIAL RELEASE

On February 6, 2024, Mr. Green was charged with attacking an exhibit at the National Gallery of Art. He was released pending trial and expressly ordered not to commit any additional offenses and to stay out of D.C. and away from any museums or public monuments. On February 14, 2024, Mr. Green entered the National Archives and dumped red powder on the case containing the U.S. Constitution, the Declaration of Independence, and the Bill of Rights. Mr. Green has violated his conditions of release and demonstrated that he is unwilling to abide by those conditions. For the following reasons, the Government requests that the Court revoke Mr. Green's conditions of release and that he be detained pending trial.

BACKGROUND

*The Charged Conduct*

On November 14, 2023, Jackson Green and other members of the Declare Emergency climate protest group entered the National Gallery of Art (NGA). Green walked around NGA before approaching the mural of the 54th Massachusetts Regiment. Green proceeded to remove

1

red paint from his pocket and paint on the wall listing the names of the Regiment "HONOR THEM," in red paint.

Green was interviewed after the offense and waived his *Miranda* rights in writing. Green admitted to the offense and stated that he pained the wall to draw attention to climate change. He stated he was homeless. He had his attorney's name drawn on his body in marker. In addition to his oral statements, Green made a written statement in which he admitted to the offense and provided details of his motives.

Other members of Declare Emergency live-streamed the offense and Declare Emergency publicized the attack on social media. It cost $706 to repair the damage.

On February 1, 2024, Mr. Green was indicted on one count of Damage to National Gallery of Art Property in violation of 18 U.S.C. §§ 6303, 6307.

### *Mr. Jackson's Initial Appearance*

On February 6, 2024, Mr. Green self-surrendered and made his initial appearance before the Honorable G. Michael Harvey. Judge Harvey ordered Mr. Green released subject to certain conditions. Mr. Green was ordered not to violate any federal, state, or local law while on release. *See* ECF No. 7 at 1. Additionally, Mr. Green was ordered to stay-away from Washington, D.C. and also to stay away from all museums and public monuments. *See* ECF No. 7 at 3. Notably, this stay-away was included over defense objection and following extensive argument. Mr. Green, while under oath, stated that he understood these conditions and agreed to them. When Mr. Green indicated some hesitation with respect to his stay-away order, Judge Harvey indicated that he could alternatively order pretrial detention.

Mr. Green proceeded to sign his release conditions twice. *See* ECF No. 7 at 4 and 6. In doing so, he acknowledged he was aware of the conditions of release and promised to abbey them. *Id.*

### *The Attack on the Founding Documents*

Despite these conditions, eight days later, on February 14, 2024, Mr. Green and other members of Declare Emergency entered the National Archives at 700 Pennsylvania Avenue NW. Mr. Green (circled in yellow) and a co-conspirator stood in front of the display of the U.S. Constitution, and emptied bags containing red powder on the case.

*Figure 1*



As they did so, they made statements concerning climate change.

Mr. Green was arrested, identified himself by name, and was informed of his rights, including his *Miranda* rights. Mr. Green waived those rights in writing and was interviewed.

During the interview, Mr. Green was still covered in powder and some of the powder rubbed off on the *Miranda* waiver.

Green admitted to entering the National Archives and exploding a balloon containing red tempera paint powder over himself and the case containing the Constitution, the Declaration of Independence, and the Bill of Rights.  At the time of the interview, Green was wearing a t-shirt with the name "Declare Emergency" on it.  Green stated that he was seeking to raise awareness to the issue of climate change and that President Biden should immediately declare a state of climate emergency.

Mr. Green's conduct was filmed by a reporter and shared over social media, including by other members of Declare Emergency.[1]  His conduct was also captured on National Archive surveillance video.[2]

The National Archives were closed as a result of this attack from February 14, 2024 to February 17, 2027 to allow for repairs.  As of February 17, 2024, it had cost $23,277.45 to repair the damage caused by Mr. Green.[3]

On February 15, 2024, Mr. Green was charged in D.C. Superior Court with two charges: Defacing Public Property, in violation of 22 D.C. Code, Section 3312.01 and Destroying Property, in violation of 22 D.C. Code, Section 303.[4]  Over the Government's objection, Mr. Green was released from D.C. Superior Court custody.  The Government separately moved for this Court to

---

[1] A version of this video will be presented as Government's Revocation Exhibit 1.

[2] A portion of this video will be presented as Government's Revocation Exhibit 2.

[3] This estimate does not include the cost of the equipment and materials used in repairs, which estimates are still forthcoming.

[4] The Criminal Information in that case will be presented as Government's Revocation Exhibit 3. The sworn affidavit underlying that Information will be presented as Government's Revocation Exhibit 4.

issue a warrant for Mr. Green's arrest pursuant to 18 U.S.C. § 3148(a) so that his conditions of release could be revoked. This Court issued a warrant.

On February 16, 2024, Mr. Green appeared in Court for his initial status hearing. He was detained on the open warrant. At that hearing, Mr. Green was still wearing the clothes he wore during his attack at the National Archives and was still visibly covered in red powder. The Court scheduled a hearing for February 21, 2024 to determine whether Mr. Green's conditions of release should be revoked.

## **ARGUMENT**

Under 18 U.S.C. § 3148(a), "[a] person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release." To do so, a judicial officer must hold a hearing and make certain findings. 18 U.S.C. § 3148(b). *First*, the Court must find "that there is (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; *or* (B) clear and convincing evidence that the person has violated any other condition of release." *Second*, once either of those threshold findings are made, the Court must then find that "there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or . . . the person is unlikely to abide by any condition or combination of conditions of release." *Id.* Where the violation in question is the commission of a new felony offense, there is a rebuttable presumption that no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community. *Id.*

I. **Mr. Green Committed a Federal, State, or Local Crime While on Release and Violated the Conditions of His Release.**

There is probable cause to believe that Mr. Green has committed a federal, state, or local crime while on release. Specifically, there is probable cause to believe that Mr. Green has committed the D.C. Code offenses of Defacing Public Property, in violation of 22 D.C. Code, Section 3312.01 and Destruction of Property, in violation of 22 D.C. Code, Section 303.

To prove that a defendant committed D.C. Destruction of Property, the Government must show that a defendant: (1) damaged, destroyed, or attempted to damage or destroy; (2) property that was not his; (3) voluntarily and on purpose and not by mistake or accident; and (4) the defendant intended to damage or destroy the property or demonstrated an extreme indifference to the value or condition of the property. 1 Criminal Jury Instructions for D.C., Instruction 5.400. Destruction of Property is a misdemeanor when the damage is less than $1,000, but a felony punishable by up to ten years' imprisonment when the damage is greater than $1,000. 22 D.C. Code, Section 303.[5]

22 D.C. Code, Section 3312.01 makes it unlawful, among other things, "for any person or persons willfully and wantonly to . . . write, mark, draw, or paint, without the consent of the owner or proprietor thereof, or, in the case of public property, of the person having charge, custody, or control thereof, any word, sign, or figure upon any property, public or private, building, statue, monument, office, public passenger vehicle, mass transit equipment or facility, dwelling or structure of any kind including those in the course of erection."

---

[5] Under D.C. law, the damage to property under these circumstances would be the reasonable cost of repairs. "Where repairable damage or destruction is caused to a portion or portions of a greater whole, the value of the property damaged or destroyed is to be measured by the reasonable cost of the repairs necessitated by the malicious conduct." *Nichols v. United States*, 343 A.2d 336, 342 (D.C. 1975)

Mr. Green's conduct—which he admitted to and is captured on multiple different videos—amounts to violations of both statutes. Further, the Government anticipates that Mr. Green will soon be charged with violating 18 U.S.C. § 1361 (Destruction of Government Property). "To find a defendant guilty of injuring, damaging, or destroying Government property in violation of 18 U.S.C. § 1361, the Court must find beyond a reasonable doubt that: (1) the defendant injured, damaged or destroyed property; (2) that the defendant did so willfully; and (3) that the property belonged to the United States." *United States v. Grider*, 651 F. Supp. 3d 1, 16 (D.D.C. 2022). As with D.C. Destruction of Property, damage less than $1,000 can be charged as a misdemeanor, but damage greater than $1,000 is a felony punishably by up to 10 years' imprisonment. Mr. Green's conduct likewise violated this statute.

In addition to violating local and federal law, Mr. Green also violated the conditions of his release. He was ordered—over defense objection—to leave D.C. and specifically to stay away from all museums, whether in D.C. or not. Mr. Green indisputably did not do those things. Despite Judge Harvey's express admonition, despite swearing to those conditions under oath, and despite signing his name indicating his understanding of those conditions, Mr. Green neither left D.C. nor stayed out of museums. To the contrary, he did the very thing his release conditions were intended to prevent: he went to a museum and attacked a valuable historical artifact.

## II. Mr. Green Poses a Danger to the Community and is Unlikely to Comply with Conditions of Release.

Because there is probable cause to believe that Mr. Green committed a felony offense, there is a rebuttable presumption that there are no condition or combination of conditions that will assure the safety of the community were Mr. Green to be released. *See* 18 U.S.C. § 3148(b). Mr. Green cannot overcome this presumption.

As the Supreme Court held in *Salerno*, "[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, . . . consistent with the Due Process Clause, a court may disable the arrestee from executing that threat." *United States v. Salerno*, 481 U.S. 739, 751 (1987). "The threat need not be of physical violence, and may extend to non-physical harms such as corrupting a union." *United States v. Munchel*, 991 F.3d 1273, 1283 (D.C. Cir.), *judgment entered*, 844 F. App'x 373 (D.C. Cir. 2021). Mr. Green presents a clear and identifiable threat to our community: he is here solely to engage in these types of attacks. Mr. Green does not live here, he did not grow up here, he has no ties to our community. Instead, he moved here to be a professional agitator. His only tie to our community is the fact that Declare Emergency—a group dedicated exclusively to committing crimes to raise awareness to their politics—pays him to be here. Mr. Green has stated that he intends on staying in D.C. until President Biden declares a climate emergency. Given his stated purpose, he will presumably continue to engage in these types of offenses until that time. And it is likely that his offenses will continue to intensify as they did here, expanding from an attack on the National Gallery of Art to an attack on this country's founding documents. Mr. Green has demonstrated that if he is released he will continue these attacks despite being aware of the consequences. Therefore, he represents a danger to our community that cannot be mitigated with conditions.

Similarly, Mr. Green has demonstrated that he is unlikely to abide by conditions of release. Mr. Green, under oath, swore to Judge Harvey that he would leave D.C. and stay away from all museums. He did so despite apparently being aware that his attack on the National Archives was planned for just eight days later. Mr. Green lied under oath to a federal judge and falsely agreed to conditions of release with no intention of honoring them. Nothing has changed between the

moment Mr. Green lied under oath and now. On February 6, when he appeared before Judge Harvey, he was expressly made aware of the penalties he was facing both for the charged offenses as well as any violations of his pretrial release. The pretrial release order that he signed stated that if he committed additional offenses he could face consecutive punishments, including up to ten years' imprisonment. Indeed, Mr. Green was so unafraid of the potential consequences that he appeared before this Court wearing the evidence of his offense: the same red-powdered clothes that he wore during his attack at the Archives. Given his egregious conduct, the Court cannot trust him to abide by conditions of release and cannot trust any assurances he would offer to the contrary.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court revoke Mr. Green's conditions of release and detain him pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

*/s/ Cameron A. Tepfer*
Cameron A. Tepfer
D.C. Bar No. 1660476
Assistant United States Attorney
United States Attorney's Office
601 D. Street, NW
Washington, DC 20579
202-258-3515
Cameron.Tepfer@usdoj.gov