UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : CRIMINAL NO. 1-24-cr-62 (ABJ) |
| JACKSON GREEN | : |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Jackson Green, through undersigned counsel, submits this sentencing memorandum to aid the Court at sentencing. Following a guilty plea, Mr Green was found guilty of one count each of: Destruction of National Gallery of Art Property in violation of 40 U.S.C. §§6303 and 6307, and Destruction of Government Property in violation of 18 U.S.C. §1361. Based on the facts and arguments below, Mr Green requests the Court sentence him to 60-days on each count, followed by a period of supervision to include community service; supervision to convert to unsupervised upon completion of community service. We submit that this sentence would most accurately address the concerns of the sentencing statute, 18 U.S.C. §3553.

As is our practice, we are not going to belabor the Court with a recitation of the information contained in the Presentence Report. Rather we will contain our remarks to factors we feel pertinent and relevant to the Court's sentencing calculus outside of that document, focusing on Mr Green's actions and memories of the events here, and perspective on his position over nine months later. In a slightly unusual mode, after meeting with Mr Jackson to consider our memorandum, Mr Jackson has asked that a statement he has prepared be presented to the Court verbatim. The following then, is directly from Mr Jackson.

*My goal in taking these actions was to draw public attention to the climate crisis and its social justice implications in order to urge our political leaders to take urgent action. At the time, I felt that engaging in these actions was the best method to achieve this goal and that the benefit of taking part in these actions was worth the cost, but I realize now that I was only sufficiently considering the price I would have to pay for my actions and did not sufficiently consider or accurately estimate the price others would have to pay. I also unfortunately overestimated the positive impact my actions might make.*

*I'm sorry to all the people involved in the extensive clean up process. I'm sorry to the people who were visiting and working at the Archives and the National Gallery of Art on the days of my actions for the fear I caused when they didn't know what the paint powder was or what was happening at all. I know I made both visitors and employees feel unsafe, which may have a lasting impact on how these people feel about visiting museums and monuments in the future and how the employees feel about coming into work each day.*

*Also, I am very sorry to the people I offended - especially People of Color - by my vandalism of the Shaw 54th Regiment Memorial. My intention in choosing this piece of art was to draw attention to the fact that the climate crisis has and will continue to impact People of Color the most, but I realize now that my choice to vandalize the only Black monument in the museum was tone deaf and problematic, especially considering I am White and have no right to speak for People of Color.*

*I did genuinely think we were going about the actions in such a way that they wouldn't cause significant harm to others, but I realize now the ignorance and lack of consideration that belief represented. I also recognize that regardless of my intentions, the harm I caused is real and is my responsibility.*

2

*My views on the actions I engaged in have developed a lot over the past 9 months. I have come to realize that, in addition to causing direct harm to individuals, destructive protest actions like the ones I carried out can lead to the opposite of our intentions by creating a negative response - turning people off from climate activism and creating further discord.*

*During my time at Living Energy Farm while I was on pretrial release this summer, I learned a lot about nondestructive ways to engage in climate activism - such as creating and spreading accessible sustainable technologies. I got to be a part of their community, which models a communal, sustainable, fossil-fuel free way of living. I'd like to get further involved in this type of regenerative climate activism after prison. I want to thank you and pretrial services for giving me the opportunity to live and work at Living Energy Farm and to learn from and connect with that community, and I apologize for the disrespect I showed in squandering a big portion of that opportunity and further wasting the court's time and resources through violating my release conditions.*

*I plan to make the most of my time in prison by taking courses if I'm able to. I also want to work on getting better connected with community mentors and to keep listening and learning from others. I am still trying to figure out how to best approach advocating for political action to address the climate crisis in more productive, nondestructive ways going forward. My ultimate goal is to keep learning about and participating in better methods to fight for social justice that are not so divisive and harmful to my community.*

*In summary, I am genuinely sorry to all the people I harmed through my actions, and I sincerely apologize to the court for all of your wasted time and energy over the past year.*

*Thank you.*

Counsel and Mr Green have discussed the actions underlying this matter, and have some additions we would make to some of the comments Mr Green makes above, and we would take the opportunity to bring other concerns we've discussed before the Court.

First, we touch on the issue of remorse. While remaining as committed to the cause of raising public attention regarding climate change as ever, Mr Green fully understands that the manner in which he went about it was ineffective and inappropriate. Regarding the incident in the National Archives, the original concept was for a publicity stunt to garner attention. However, the manner in which the incident took place was a massive miscalculation. He sees the irony in the way the paint powder physically spread throughout the chamber in such an unintended fashion as symbolic to the manner in which the spread of the incident in the media did not have the desired effect intended. He, and others involved in the planning, did not anticipate the backlash this incident generated. In retrospect it would have been just as effective to pour liquid paint over himself and not have any contact with the protective casing period. There wasn't any need to endanger any artifact or item of value to make the point, even a protective casing. In hindsight, Jackson Green realizes his actions were not well considered and he is sorry for the consequences arising from his actions and as he discussed above the number of people these events impacted.

We would additionally bring to the Court's attention Mr Green's miscalculation of the legal consequences. It is true that the plan in both instances here was to make a point by impacting the immediate area in the case of the National Gallery of Art, and the casing of the Constitution in the Archives. With respect to the Archives incident, great care had been taken to ensure the actual document was not harmed. We already discussed above the physical impact/fall-out on the chamber, but it was a mistake to not foresee that any damage to the casing of the exhibit would be considered as damage to the exhibit itself. Indeed, the magnitude of the legal consequences of

4

these acts in these matters was completely unforeseen by the planners and Mr Green. It was also entirely reckless not to envisage damage to the chamber itself.

As a general matter, we'd highlight to the Court that at no time in either instance did Jackson Green approach these incidents with malice. He genuinely had no intent to do any actual harm to anything of cultural value. While he fully accepts the responsibility for his actions and understands the legal position he finds himself in, he wishes the Court to understand that he didn't get here by having a bad-heart. In other related matters, the Court has previously opined on the lack of genuine remorse apparent by defendants. The Court should be under no illusion that Jackson Green takes the opposite approach and is consumed with regret for his involvement here.

**Sentencing Factors.**

18 U.S.C. §3553 provides:

> **(a) Factors To Be Considered in Imposing a Sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> > **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> > **(2)** the need for the sentence imposed—
> > > **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > > **(B)** to afford adequate deterrence to criminal conduct;
> > > **(C)** to protect the public from further crimes of the defendant; and
> > > **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

Addressing these factors individually we find the following. Nature and circumstances of the offense with respect to this offense is unusual in these incidents, and we will return to it later. On history and characteristics of the defendant there is not much debate. Jackson Green has no criminal history. His background then displays an individual who, has led a completely law-

abiding to this point. Subsection (2)(A) discusses seriousness of the offense, respect for the law, and just punishment for the offense. We will return to this also when we discuss nature and circumstances of the offense. Subsection (B) contemplates adequate deterrence to criminal conduct. He has been emotionally shaken by these experiences here, and the insight he has acquired has left him with the strongest of convictions that this will be his last. Incarceration is not necessary to make that point. Subsection (C) considers a similar idea as that in (B), in protecting the community from further criminal contact. Here we point out given Mr Green has no criminal convictions, he is as far from being a career offender as one can be, and again, given his experiences in the current matter, the public has nothing to fear from Jackson Green in the future. As a final comment on Subsections (B) and (C), the events in these matters constitute Mr Green's first and only foray into such protests. He has been scarred by the fallout and has vowed to stay as far away from such future happenings as possible. He sees a much less confrontational avenue to pursue his beleifs. Regarding Subsection (D), quite simply Mr Green has no need of any of the services available to U.S. Probation. Which brings us back to sections (1) and (2)(A).

Returning to the nature and circumstances of the offense we find in these matters this is a not a simple issue to unpack. On the one hand, the specific conduct and decisions Mr Green accepts responsibility for, in the universe of criminal conduct, are not the most egregious or dangerous considered by these courts on a daily basis. However, taken into context with the cultural items here, the nature and circumstances question becomes much less clear. There is no question that no long-term damage was done, but we are discussing two instances in which items of significant cultural and historic import were involved. The exhibit in the National Portrait Gallery related to a major milestone in the nation's history: the Civil War. A war fought over slavery in which this exhibit celebrates the story of an African-American regiment's service to the Republic in that fight. The Archives incident involved one of the nation's two most treasured documents. But we ask the

Court to take note that Mr Green and his associates did not attempt to desecrate any item itself. The fact that their actions were hopelessly miscalculated should not be mistaken for any act of malice aforethought on their part. We ask the Court to view his actions understanding the lack of sinister intentions as proof of his original harmless purpose and sentence him accordingly.

Addressing (2)(A), Jackson Green has never shown any hint of disrespect towards law and order. We highlight to the Court that he has never been associated with any organization encouraging civil disobedience, advocated overthrow of the government, destruction of items of import, displaying extremist views, or has encouraged violence in any way. In terms of any sense of danger to the community, there is simply non: it does not exist. The Court should have no concerns as to his views on the respect for law either today or for the future.

The final issue on §3553 to be discussed is the last part of (2)(A): just punishment for the offense. At its heart, this is the very central issue for this Memorandum as a whole. Jackson Green is a law-abiding citizen, who got involved in a scheme that was poorly planned, poorly enacted, and massively miscalculated its physical effects and resulting notoriety. His involvement with the climate change group, who's ultimate beliefs he still shares, has changed his life irrevocably—he will never be the same again. This, in and of itself, is more than adequate punishment. In no way, shape or form, should the Court be under the impression that a departure sentence would be seen as getting away with anything. For the rest of his life Jackson will forever be associated with these events, and he takes this to heart. Given all discussed above, including the fact of his decision to take early and sincere responsibility for his actions, we ask the Court to sentence in accordance with our proposal.

**Need to avoid sentencing disparities.**

A word on sentencing disparities. In United States v. Joanna Smith, 23-cr-182, the defendant was charged in another instance of climate protest involving the same group Mr Green was associated. Again, an item of significant cultural value was selected as the focus of the protest: this time Edgar Degas' statue "Little Dancer." Again the protest sought to impact the protective casing, but not the statue itself. At sentencing, the Court imposed 60-days imprisonment with 24-months of supervised release. The Court ordered a fine and restitution. 18 U.S.C. §3553 (a)(6) seeks to have the Court look to similar conduct in other case. Here we have a mirror image of the offences. They are *identical* purely because they were planned and executed by the *same* organization. A sentence that varies from the one given to Ms Smith would indeed by disparate by definition and would fly in the face of 18 U.S.C. §3553 (a)(6). We ask the Court to sentence Mr Green commensurate with sentences already been imposed by this Court in these matters.

### Conclusion

Taking all the above into account. We ask the Court to provide the following sentence. We submit a sentence of 60-days incarceration on each count, followed by a period of supervision to include community service; supervision to convert to unsupervised upon completion of community service. We believe the community would benefit far more from his service than his incarceration. We believe this sentence to best satisfy the concerns of 18 U.S.C. §3553.

/s/ *Peter A. Cooper*
_____
Peter Cooper; 478-082
Counsel for Jackson Green
400 5th Street NW.
Washington DC 20001

9